UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, L.L.C., | ) | |
| Plaintiff(s), | ) ) ) | |
| vs. | ) | Case No. 4:05CV328 JCH |
| CHRISTINA MOSCA, | ) ) ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Christina Mosca's Motion to Dismiss for Lack of In Personam Jurisdiction, filed February 22, 2005. (Doc. No. 2). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Plaintiff Charter Communications, L.L.C. ("Charter") is a limited liability company, duly organized and existing under the laws of the State of Delaware. (First Amended Petition ("Complaint" or "Compl."), ¶ 1). Charter is a subsidiary of Charter Communications, Inc., and has its headquarters and principal place of business in St. Louis County, Missouri. (Id.).

Defendant Christina Mosca ("Mosca"), a resident of the State of Alabama, formerly worked for Charter as a "Government Relations Manager I." (Compl., ¶¶ 2, 5). In that capacity, Mosca was responsible for, among other things, communications with franchisees within her area of responsibility, franchise agreement audit and compliance reviews, and franchise renewals for those franchisees. (Id.).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Mosca's employment with Charter was terminated in the summer of 2004. (Compl., ¶ 8). In connection with her separation from employment, Mosca executed and entered into a Separation Agreement And Release (the "Agreement") with Charter on or about July 23, 2004. (Id., citing attached Exh. A). The Agreement contains the following provision regarding choice of law:

> This Agreement was drafted in Missouri, and the Company's corporate offices are in Missouri. Therefore, this Agreement is to be governed by and interpreted according to the internal laws of the State of Missouri without reference to conflicts of law principles, and this Agreement shall be deemed to have been accepted and entered into in the State of Missouri.

(Compl., attached Exh. A, ¶ p).

Charter filed its Complaint against Mosca in Missouri State Court on or about February 14, 2005. In its Complaint, Charter alleges that in the course of her post-Charter employment, Mosca has violated several terms of the Agreement. (Compl., ¶¶ 11-25). Charter thus seeks both damages and injunctive relief against Mosca.

Mosca removed Charter's Complaint to this Court on February 22, 2005, alleging complete diversity of citizenship exists between the parties. (Doc. No. 1). As stated above, Mosca filed the instant Motion to Dismiss on February 22, 2005. (Doc. No. 2). Specifically, Mosca maintains Charter's Complaint must be dismissed, as this Court lacks personal jurisdiction over Mosca.

## DISCUSSION

Charter and Mosca contest whether this Court properly may exercise personal jurisdiction over Mosca.[1] A federal court engages in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant

---

[1] Mosca devotes the majority of her memorandum in support to a discussion of which state's laws, Alabama's or Missouri's, should be applied to this dispute. Upon consideration, however, the Court finds that discussion irrelevant to its decision whether to exercise personal jurisdiction over Mosca.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

committed one of the acts enumerated in the state long-arm statute. Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D.Mo. 1995) (citations omitted). If so, then the court must determine, "whether the exercise of personal jurisdiction over [the] defendant comports with the Due Process Clause of the Fourteenth Amendment." Id. (citations omitted). In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

### A. Missouri Long-Arm Statute

Missouri's long-arm statute provides in relevant part as follows:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

   (1) The transaction of any business within this state;

   (2) The making of any contract within this state;

   (3) The commission of a tortious act within this state;....

3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. §506.500. The Eighth Circuit has stated that, "[n]onresidents are subject to personal jurisdiction to the extent that state law allows." Dominium Austin Partners, L.L.C. v. Emerson, 248

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

F.3d 720, 726 (8th Cir. 2001) (citation omitted). "Missouri liberally construes the provisions of its long-arm statute in order to exercise its jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute." City Merchandise, 176 F.Supp.2d at 955 (internal quotations and citations omitted); see also Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir. 1984) (citation omitted); Peabody Holding Co., Inc. v. Costain Group PLC, 808 F. Supp. 1425, 1432 (E.D. Mo. 1992) (internal quotations and citation omitted) ("The legislature, in enacting this statute, sought to extend the jurisdiction of Missouri courts to numerous classes of out-of-state defendants who could not have been sued in Missouri under the preexisting law.").

In its response to Mosca's Motion to Dismiss, Charter asserts Missouri's long-arm statute permits personal jurisdiction over Mosca, as the facts alleged in the Complaint demonstrate that she transacted business in the state, entered into a contract within the state, and committed tortious acts which she knew or should have known would have a deleterious effect upon Charter within the state. (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memo in Opp."), PP. 5-6). Viewing the facts in the light most favorable to Charter, the Court agrees that with its allegations, Charter successfully makes a *prima facie* showing that Mosca entered into a contract within the State of Missouri, thereby meeting the requirements for jurisdiction under the state long-arm statute. Specifically, as noted above, the Agreement itself states that it is, "deemed to have been accepted and entered into in the State of Missouri." (Compl., attached Exh. A, ¶ p). See Angelica, 904 F.Supp. at 996 n. 1 (internal quotations and citations omitted) ("A contract is made in Missouri if the final act which gives rise to a binding agreement [e.g., acceptance] occurs within this state"). Furthermore, in signing the Agreement, Mosca acknowledged that she had read the Agreement, fully

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

understood the meaning of its terms, and entered into it voluntarily.[2] (Id., ¶ o). Mosca thus had sufficient contacts with Missouri to justify the exercise of jurisdiction in this Court under the Missouri long-arm statute.[3]

## B. Constitutional Due Process

Having met the requirements of the long-arm statute, the discussion now turns to whether Mosca's contacts with the forum comport with the dictates of constitutional due process. All Sports Arena Amusement, 244 F.Supp.2d at 1019. The Eighth Circuit has held as follows:

> In a series of cases following *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have fair warning that they could be haled into court in a foreign jurisdiction. This requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum…and the litigation results from alleged injuries that arise out of or relate to those activities.
>
> The contacts with the forum state must be more than random, fortuitous, or attenuated. The due process clause forecloses personal jurisdiction unless the actions of the defendant himself....create[d] a substantial connection with the forum State. Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with fair play and substantial justice.

---

[2] In her Motion to Dismiss, Mosca asserts the Agreement, and specifically the "choice of law" provision contained therein, constituted a contract of adhesion under Missouri and Alabama law, "based on the sophistication and resources of the parties, the unequal bargaining power of the parties, the pre-printed 'take it or leave it' form of the agreement and the financial duress imposed on [Mosca] by her sudden termination." (Motion to Dismiss, ¶ 6). Again viewing the allegations in the light most favorable to Charter, the Court is not persuaded by Mosca's argument, for two reasons: First, because Mosca herself had been a licensed attorney for nearly ten years at the time she signed the Agreement (Doc. No. 7, Exh. 2, ¶ 2), and second, because the Agreement specifically allotted Mosca fourteen days within which to consider its terms, either individually, or with the assistance of an attorney. (Compl., attached Exh. A, ¶ o).

[3] Because the Court has determined that Mosca had sufficient contacts with Missouri under the contract prong of the long-arm statute, it need not consider whether Mosca transacted business within the state, or committed a tortious act within the state. Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F.Supp.2d 1015, 1019 n. 3 (E.D. Mo. 2002).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir. 1991) (internal quotations and citations omitted).

In this circuit, the due process standard has been expressed as a consideration of five factors: "1) the nature and quality of contacts with the forum state, 2) the quantity of such contacts, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) the convenience of the parties." All Sports Arena Amusement, 244 F.Supp.2d at 1020 (citation omitted). See also BIB Mfg. Co. v. Dover Mfg. Co., 804 F.Supp. 1129, 1132 (E.D. Mo. 1992) (citation omitted). The first three factors are primary considerations, while the latter two are secondary. Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (citations omitted).

In the instant case, the parties dispute whether the nature, quality, and quantity of Mosca's contacts with the forum state were significant. For example, Mosca maintains she never traveled to Missouri, nor did she do any work for governmental entities in Missouri. (Doc. No. 7, Exh. 2, ¶ 7). Charter asserts that during her employment, Mosca regularly communicated via e-mail, telephone, and mail, with individuals in Charter's Legal, Accounting, Finance, and Programming departments, all of which are based in St. Louis, Missouri. (Plaintiff's Memo in Opp., Exh. A, ¶ 5).[4] Charter further notes that the Agreement at the heart of the current dispute was entered into in Missouri. Upon consideration of the foregoing, the Court finds that, viewing the allegations in the light most favorable to Charter, the nature, quality and quantity of Mosca's contacts with Missouri were both strong and beneficial to Mosca. Further, with respect to the relation of the cause of action to Mosca's contacts with the forum state, as noted above, Mosca's contacts with the forum state include

---

[4] Charter further alleges that since her termination, Mosca has had numerous contacts with Charter in Missouri, for the purpose of advancing her business as a consultant to Charter franchisees. (Plaintiff's Memo in Opp., P. 3).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

entering into the Agreement at issue in Missouri. The relevant contacts thus directly gave rise to the instant cause of action.

With respect to the secondary consideration of the forum's interest in the litigation, Missouri has a significant interest in providing a forum for its resident, Charter. Angelica, 904 F.Supp. at 997. Finally, while it may be more convenient for Mosca to litigate this claim outside of Missouri, it does not appear to violate her due process rights to subject her to the jurisdiction of the forum encompassing the headquarters of the company for whom she worked for more than four years. See Angelica, 904 F.Supp. at 997-98 ("However, there is no showing that any inconvenience to the defendant outweighs the other factors which cut in favor of specific personal jurisdiction in this case.").

In light of the foregoing, the Court finds that Mosca, "purposely availed [herself] of the privilege of conducting activity within Missouri," Angelica, 904 F.Supp. at 997 (internal quotations and citations omitted), so that the assertion of personal jurisdiction over her does not offend traditional notions of fair play and substantial justice. Dakota, 946 F.2d at 1389. Mosca's Motion to Dismiss for Lack of in Personam Jurisdiction will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Mosca's Motion to Dismiss for Lack of In Personam Jurisdiction (Doc. No. 2) is **DENIED**.

Dated this 29th day of June, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com