IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHARTER COMMUNICATIONS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:05-CV-328-JCH |
| ) | |
| CHRISTINA MOSCA, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT TERMS OF OCTOBER 28, 2005

The parties reached a settlement agreement on October 28, 2005, as a result of the mediation process. All parties signed the agreement. The settlement agreement (Ex. 1) is crystal clear and contains no ambiguities as far as Mosca is concerned. Each word of the agreement was painstakingly debated and many proposals were offered and rejected until the final agreement was consummated in writing. As far as Mosca is concerned, there are no mistakes and Mosca has and will continue to abide by the terms of the October 28, 2005, signed agreement.

Unfortunately, Charter does not seem to be satisfied with the October 28, 2005 settlement and insists on Mosca signing a settlement agreement and stipulated final order and judgment (Ex. 2) that provides substantial more relief than agreed upon in writing. Mosca's proposed changes (Ex. 3) have been rejected by Charter.

Federal courts do not automatically have ancillary jurisdiction to enforce a settlement agreement arising out of federal litigation; jurisdiction exists if the parties' obligation to comply with the terms of settlement agreement is made part of dismissal either by a provision retaining jurisdiction over the settlement agreement or by incorporation of the terms of the settlement agreement in the order.  *Missouri v. Missouri Dept. of Mental Health,* 62 F. 3rd 1126, 1127 (8th Cir 1995).  The 10/28/05 settlement agreement gives this court jurisdiction to enforce the settlement terms in every possible way including retaining jurisdiction, incorporating the settlement agreement into its final order and making its preliminary injunction order a permanent order.  A settlement agreement is a compromise by each party to the agreement of certain rights in order to gain what it did not have an established right to claim, and Missouri courts generally treat settlement agreements as contracts.  *Daily v. Daily*, 912 S.W. 2d 110, 114 (Mo. App. 1995).  If a settlement agreement is a contract, it is binding.  *State ex. rel Missouri Cable*, 929 S.W. 2d 768 ( Mo. App. 1996).  If parties to a separation agreement intended to use certain words then they would have put it in the plain language of the agreement.  *Daily v. Daily.*  The words of a separation agreement are accorded their plain and ordinary meaning as understood by a reasonable and average person.  *Bolton v. Bolton*, 950 S.W. 2d 268, 271 (Mo. App. 1987).

The October 28, 2005 agreement provides that Mosca shall not provide consulting work for the cities of Talladega, Opelika and Walker County until after December 31, 2007, and shall not provide consulting work for all other Alabama franchise until after October 16, 2006.  Charter's proposed stipulated final order and judgment states that Mosca may not "solicit, communicate with, contract with, attempt to contract with, provide any services to or work for any governmental entity located in the State of Alabama with whom Charter or one of its affiliates has a franchise agreement in connection with, concerning, or with respect to any matter concerning a cable franchise agreement or relationship, or the renewal, negotiation or extension of any such agreement or cable franchise."

Mosca did not agree in any way, shape or form to this language on October 28, 2005, (see Mosca affidavit (Ex. 4), this Honorable Court did not order such language on October 1, 2005, in its Preliminary Injunction Order (Ex. 5), and the July 23, 2004 separation agreement between the parties contains no mention of such language.  Mosca is ready and able to refrain from providing any consulting services to or working for any governmental entity with whom Charter or one of its affiliates has a franchise agreement **in connection** with or respect to any matters concerning that agreement or the franchise relationship or its renewal (verbatim language from October 1, 2004 order; the October 28, 2005, agreement states preliminary injunction order becomes permanent).  Mosca has a clear understanding of what she agreed to on October 28, 2005 and what the Court previously ordered, but Charter

insists on Mosca signing an agreement that prohibits her from helping other cable companies build cable systems in Alabama Charter cities (even though the October 28, 2005, states Mosca may work for other cable or satellite companies without restriction), from providing consulting services to an Alabama city in connection with another cable company's franchise agreement with that city (where Charter and another cable provider provided services in the same city- known as overbuilding), from advising cities that she can in fact work for them beginning October 17, 2006, and from a host of other rights never agreed to in mediation.

Mosca's ability to market her company, National Cable & Telecommunications Consulting, is vital to her ability to attract business. Mosca has done numerous things to market her company including attending and buying a booth at the Alabama League of Municipalities Convention where hundreds of Alabama governmental entities are represented.  Between now and October 16, 2006, Mosca plans on informing potential clients of the existence of her company and that on October 17, 2006, she will have the ability to provide cable consulting services to Alabama Charter cities.  If a city chooses of its own volition to wait until October 17, 2006, to address important cable or Charter issues with Mosca as their representative then that decision is well within a franchisee's right and should be respected by Charter.  Mosca does not currently have the right to represent Alabama Charter cities in connection with Charter issues pursuant to the preliminary injunction order and October 28, 2005 settlement agreement, but she has the right to tell them

when she can in fact do so and to otherwise market her company. From Charter's standpoint Mosca's marketing attempts should be immaterial; Mosca will not be representing its franchisees or provide cable consulting services until October 17, 2006 and will never have the right to divulge confidential information or trade secrets to them. It seems Charter's motive for insisting on the objectionable language is to impermissibly shut down Mosca's company by blocking her from communicating with Alabama Charter franchises regarding the existence of her company or any non-Charter related cable issue for the next nine months. Mosca can certainly communicate with Charter franchisees about her services or company without providing cable consulting services to them.

The October 28, 2005 settlement agreement states that Mosca may not perform work relating to any audit for any Alabama Charter franchise covering the period prior to July 23, 2004. This language is simple to understand. Charter, however, insists on Mosca being prevented from "suggesting to, encouraging, advising or telling any city or other governmental entity that any such audit or review should be conducted". Alabama law and many Charter franchise agreements in Alabama state that a governmental entity has the right to audit its franchise fees for a period of three or five years. Since Mosca can only perform an audit of franchise fees back to July 23, 2004, some other party would have to perform an audit of the time period prior to July 23, 2004. As evidenced in court and in the attached affidavit, Mosca does not have possession nor has seen the results of the audit she

performed for Charter in June 2004 and the general manager for Charter in Alabama testified in court that Charter was in compliance with all franchise fees in Alabama and there were no delinquencies.  Accordingly, there is nothing wrong with Mosca advising her clients that they have the legal and contractual right to perform a three or five year audit and since Charter agreed in mediation to allow Mosca to perform audits on Charter cities, it is only logical that Mosca advise a Charter franchise that it should perform an audit for the time period Mosca may not perform herself.

The parties agreed in mediation to send a mutual feel good letter to Alabama Charter franchisees and to have mutual non-disparagement language in the agreement.  Charter's proposed mutual feel good letter to the franchises is acceptable except for the sentence "All prior correspondence from Ms. Mosca has been retracted and should be disregarded".  Mosca has sent numerous letters and has had numerous conversation with Alabama Charter franchises since being terminated from Charter and did not agree to withdraw these communications as part of the agreement nor did Charter request such a withdrawal during the mediation, and the Court did not order such in the preliminary injunction order.

Charter's proposed mutual non-disparagement language in the proposed settlement agreement states that Mosca will not criticize, disparage or denigrate any of the Charter parties (as defined in ¶3(c)) but doesn't require those same Charter parties not to disparage Mosca.  Mosca

understands mutual non-disparagement to mean the parties who have pledged to non-disparage each other are identical in nature.

## **CONCLUSION**

This case has been settled, and it was settled using clear language.  All parties signed the agreement and were represented by counsel, who also signed the agreement.  Mosca moves this Honorable Court enforce the attached settlement agreement and stipulated proposed final that Charter drafted without the language objected to by Mosca in this brief.  Mosca regrets to involve the Court in this matter, but the parties have reached a complete impasse in resolving what the terms of the October 28, 2005, settlement agreement mean and as to the correct wording of the final agreement and stipulated order.

Respectfully submitted this the 30th day of January, 2006.

/s/  Richard G. Poff, Jr.
Richard G. Poff, Jr.
Attorney for defendant
205 North 20th St., Suite 310
Birmingham, AL 35203
(205) 322-7050-phone
(205) 251-0425 – fax
RGPOFFJR@AOL.COM